Good morning, members of the Supreme Court, and welcome to the motion here for the petitioner, Xiaojun Yang. Although we argued for a reversal in our voice, we think that the more convenient thing to do in this case is to bring it into the Immigration Church, because the Immigration Church, in its decision, failed to consider and meet the council-binding imperatives in the record. First, it is important to note that the Immigration Church decided this case is not the same church we heard in testimony. Thus, it describes Richard's decision only based on a portion of the paper, and we know, Mr. Secretary, once you review George Frederick's decision, you can end that decision on page 94 of the administrative record. The Immigration Church specifically states, having read the transcripts of Civil Act No. 17 and the testimony of the United States Supreme Court, the court will make the following findings. And in the rest of that decision, the only thing the Immigration Church does is miss a mission on the system of human resources, and also only mentions the 140 agreements. Does not consider the platform of documentary evidence for operating the bonfires of the marriage of individuals. The bills are included in both of their names. Since the state of Texas has quietly resided for about three years, she made account statements, reserves information, compensations, and offers of assistance for a one-day plan. Also, there are two new tax returns while they resided here, and 17 letters have been sent to each of the hostages to the state of Texas to confirm the clearance. But now we know that the Immigration Church has made a remarkable mission on the testimony of individuals regarding the bonfires of the marriage, and her testimony regarding her existence in the court of law. In this decision, all the Immigration Church has said about this year's testimony is that she did not receive any of these bonfires from friends. That is not all that the Immigration Church has said about the testimony. Also, of course, the case specifies that she was in relationship to her friends. These friends, excuse me, but did not file for a commission for their retentions. The community name would have been Sean Gordon, the pastor of the Q America Church, and she would not have gone to the Immigration Church. She would have worked and received a lot of money, and as a commission, she was told to leave it there. But he still had to go to a fire and come to their house in order to keep up appearances when their family came back. Carl Oppen would verbally abuse their horses. He would throw things on the floor and at the wall. He would demand that Ms. Sharon have sex with him, of course. But again, in serious tears, she would say that she would go, that she would go get through something else. Clearly, Ms. Sharon testified that she loved her job in the church, which was to teach English to other children, but she gave all that up, and even if she did not believe that she was entering into a lifelong partnership, the Immigration Church did not consider any of this. The bondage hearing also did not consider the problems that these two families were facing. Ms. Sharon's testimony regarding her willingness for further hearings, please continue to hear of where it happened. The next evidence is about the removal of Ms. Sharon from her sister named CJ. From the context of the meeting, it's clear that Ms. Sharon does not have a sister named CJ. The Immigration Church did not make any findings after Ms. Sharon's testimony, so it's simply never explained what the testimony of Ms. Sharon, corroborated by her sister's testimony, can lead to the conclusion that Ms. Sharon did not have a sister named CJ. What's left is a credible piece of evidence that's been moved, that's been stored in the mail, where there is any indication that the DNA documents are one of the evidence. The decision cannot be changed, and such indications include Ms. CJ's record and feelings mentioned by the incriminator, and potentially the spotting evidence. Most easily happens here. Ms. CJ misstates these two as complete peers or sisters, seeing that they were only, um, they only returned to them in a year or two place. And, she suspects that all she conserved were her transcripts, which, well, most of them, included her father's textbooks, and that the first time she heard her testimony was a year or two ago. Do you know whether your client is the person who authorized her to record a new identity as CJ's name? Excuse me? The person who authorized her to record her identity as CJ's name? Well, we don't know her attorney's name, and, um, the University of California was working on the issue, and the attorney's office has some additional hearings, and some additional testimony in the case. Do you have an area of law in which you're supposed to stand? I'm really trying to set up an area of law in which I'm supposed to stand. I'm really trying to set up an area of law in which I'm supposed to stand. Are you aware that you're usually found to stand at the conclusion of the agreement with the publisher? I don't understand why, for example, to say, I'm supposed to stand at the conclusion of the agreement with the publisher. You're about 800 feet from the conclusion of the agreement. This is not the case. It is. So, you have a lot of work to do on the case, so there are no excuses. You're a great lawyer. I'm really trying to set up an area of law in which I'm supposed to stand. Your Honor, in the case of our main witness, well, it's you. You're the immigration judge in this case. You are the immigration judge in this case. You must not be an immigration judge in order to get money. You have to be especially careful. You have to be a patient cracker in order to get money. You have to be able to observe the money. The money has to be in the household. The money has to be on us. Your Honor, our one and only case of the first case in this case is still the case of the First Amendment case. The case is still in progress, and it's going to come back in conjunction with the testimony. But what we think that the immigration judge should have done is not only state that he found the cases in front of us, but then say the testimony is directly in conflict with the need to define why the immigration judge is discounting all the testimony of his son and his sister in order to provide the corroborative evidence in the record that he's using to account in this case. Now, we have to argue, and I'm grateful to you, that that goes to why the case is billed a misburden. The misburden is unclear. I know it includes the evidence that the son engaged in marriage fraud, and it does require the court to analyze the evidence that the immigration judge was forced to sign on, and to, of course, appropriate it to the First Amendment. And that's why the case, and that's why the story is subpoenaed to the Constitutional Court of the United States. So I just want to thank you for that. Thank you.
judges: Fernandez, Gould, Friedland